AO 106 (Rev. 04/10) Application for a Search Warrant

Case 2:18-sw-00698-EFB   Document 1   Filed 08/20/18   Page 1 of 17

FILED

AUG 20 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
         DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

In the Matter of the Search of
A black LG cellular phone, model GPLG441GB, bearing serial no. 603VTSM545182; an LG cellular phone, model GPLG440GB, bearing serial no. 305CYPY157496; an Alcatel cellular phone, model A382G, bearing serial no. 013090004267338; a black LG cellular phone, model GPLG440GB, bearing serial no. 401CYEA370076; a black Nikon digital camera, model D3200, bearing serial no. 3616945; a black Play Station game console (PS3), model slim 320GB, bearing serial no. CG914563028-CECH-2501B—all located at the FBI Offices at 2001 Freedom Way, in Roseville, CA

) ) ) ) ) ) ) )

Case No. 2:18-SW-698 EFB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Production of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Receipt of Child Pornography |
| 18 U.S.C. § 2252(a)(4)(b) | Possession of Child Pornography |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☐ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

SA L.H. Jones
*Printed name and title*

Sworn to before me and signed in my presence.
Date: 8-20-2018

*Judge's signature*

City and state: Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO, CALIFORNIA

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, L. H. Jones, having been first duly sworn, depose and state as follows:

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since February 2005. I am currently assigned to the Sacramento Division. While employed by the FBI, I have investigated federal criminal violations related to high technology or cyber crime, child exploitation, and child pornography. I have gained experience through training at the FBI Academy and the Online Undercover Basic Course as well as through everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251 and 2252, and I am authorized by the Attorney General to request a search warrant.

2.  I submit this application and Affidavit in support of a search warrant authorizing searches of six electronic devices: (i) a black LG cellular telephone (flip phone), model GPLG441GB, bearing serial number 603VTSM545182, and any internal storage media ("**Subject Device 1**"); (ii) an LG cellular telephone, model GPLG440GB, bearing serial number 305CYPY157496, and any internal storage media ("**Subject Device 2**"); (iii) an Alcatel cellular telephone, model A382G, bearing serial number 013090004267338, and any internal storage media ("**Subject Device 3**"); (iv) a black LG cellular telephone (flip phone), model GPLG440GB, bearing serial number 401CYEA370076, and any internal storage media ("**Subject Device 4**"); (v) a black Nikon digital camera, model D3200, bearing serial number 3616945, and any internal storage media ("**Subject Device 5**"); and (vi) a black Play Station game console (PS3), model slim 320GB, bearing serial number CG914563028-CECH-2501B, and any internal storage media ("**Subject Device 6**") (collectively the "**Subject Devices**").

3.  The **Subject Devices** were lawfully seized by agents of the United States Probation Office for the Eastern District of California ("USPO") on July 10, 2018. On August 8, 2018, I took custody from a USPO agent of **Subject Device 1**. On August 15, 2018, I took custody from a USPO

agent of the remaining **Subject Devices.** After taking custody of the **Subject Devices**, I checked each into the Sacramento FBI evidence room, located at 2001 Freedom Way, in Roseville, California 95678, where they remain stored.

## STATUTORY AUTHORITY

4. This investigation concerns alleged violations of Title 18, United States Code, Sections 2251 and 2252 relating to material involving the sexual exploitation of minors (the "Specified Federal Offenses"). As the Court is aware, Title 18, United States Code, Section 2251(a) prohibits a person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or to have a minor assist any other person to engage in, or to transport any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for purpose of transmitting a live visual depiction of such conduct. Additionally, Title 18, United States Code, Section 2252 prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce.

5. I submit that probable cause exists to believe that the **Subject Devices** contain evidence, fruits, and instrumentalities of the Specified Federal Offenses, which relate to production, distribution, receipt, and possession of images of child pornography. I request authority to search the **Subject Devices**, where the items specified in Attachment A may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

6. The statements in this Affidavit are based in part on information provided to me by USPO agents, other law enforcement officers, other FBI agents, and on my own investigation of this matter. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations the Specified Federal Offenses may be located within the **Subject**

Devices.

## DEFINITIONS

7. The following definitions apply to this Affidavit and its Attachments:

a. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

b. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

c. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

d. The term "computer," as defined in 18 U.S.C. §1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

e. For the purposes of this affidavit, the term "computer" also includes any Internet capable, mobile and/or cellular telephone, capable of sending and received email communications or running various software applications.

f. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; or such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

3

**BACKGROUND REGARDING ELECTRONIC DEVICES, THE INTERNET, EMAIL**

8. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience and knowledge, I know the following:

a. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

b. The development of computers, "smart" cellular telephones, and related electronic devices has added to the methods used by child pornography collectors to interact with and sexually exploit children. Such devices serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

c. Child pornographers can now transfer photographs and videos from a digital camera onto a computer-readable format. With the advent of digital cameras and their proliferation on cellular telephones, the images can now be transferred directly onto a computer or sent from the cellular telephone. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography. Child pornography can be transferred via electronic mail or through file transfer protocols ("FTP") to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), and easy access to the Internet, the computer is a

preferred method of distribution and receipt of child pornographic materials.

  d. The ability of computers, "smart" cellular telephones, and related electronic devices, including Internet capable digital gaming consoles, to store images in digital form makes the devices themselves ideal repositories for child pornography. The size of the electronic storage media (commonly referred to as a hard drive or, in the case of mobile and replaceable storage devices: SD Cards) used in computers, "smart" cellular telephones, and related electronic devices has grown tremendously within the last several years. These storage devices can store thousands of images at very high resolution.

  e. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

  f. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Google, Inc., among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

  g. As is the case with most digital technology, communications by way of computers, "smart" cellular telephones, and related electronic devices can be saved or stored for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computers, "smart" cellular telephones, or related electronic device or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded

5

or downloaded. Such information is often maintained indefinitely until overwritten by other data.

h. Similarly, files or remnants of such files on a computer, "smart" cellular telephone, or related electronic device can be recovered months or even years after they have been downloaded or transferred onto a device or an SD card, deleted or simply viewed via the device's Internet browser. Electronic files downloaded or transferred to a cellular phone or SD card can be stored for years. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a cellular phone or SD card, the data contained in the file does not actually disappear forever at that moment. Rather, that data remains on the cellular telephone or SD card until it is overwritten by new data. Therefore, deleted files or remnants of deleted files, may reside in free space or slack space – that is, space in the memory of the cellular phone or SD card that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

i. Based on my experience, knowledge, and training, and that of other agents with whom I have discussed this investigation, I am also aware that where the evidence is of a nature that would be kept long after the criminal acts have ceased – such as the possession, distribution or receipt of digital images of child pornography – the passage of long periods of time will not make the evidence supporting the issuance of a search warrant stale. See United States v. Gourde, 440 F.3d 1065, 1071 (9th Cir. 2006) ("Thanks to the long memory of computers, any evidence of a crime was almost certainly still on [the defendant's] computer, even if he had tried to delete the images. FBI computer experts, cited in the affidavit, stated that 'even if ... graphic image files [ ] have been deleted ... these files can easily be restored.' In other words, his computer would contain at least the digital footprint of the images. It was unlikely that evidence of a crime would have been stale or missing...."); United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) (holding that the nature of the crime involving child pornography, as set forth in the affidavit, "provided 'good reason[ ]' to believe the computerized visual depictions downloaded by [the defendant] would be present in his apartment when the search was conducted ten months later"). See also United States v. Dozier, 844 F.2d 701, 707 (9th Cir. 1988) ("The mere lapse of substantial amounts of time is not controlling in a question of staleness."); United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) ("We evaluate staleness in light of the particular facts

of the case and the nature of the criminal activity and property sought.").

## BASIS FOR PROBABLE CAUSE

### A. Background of Investigation

9. On August 9, 2013, Paul Matson ("Matson") began serving a term of eight years of federal supervised release, after completing a 78-month prison sentence imposed for his conviction for possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). A search of Matson's residence in connection with the investigation of his underlying offense revealed that Matson had downloaded images of child pornography from the Internet. Matson also admitted that a certain photograph depicted him ejaculating onto a photograph of his adopted daughter, M.C. Investigators interviewed M.C., who was 38 years old at the time. M.C. stated that Matson began molesting her soon after her adoption at age 10. Matson was never charged or convicted of any crime in connection with M.C.'s accusations.

10. Among other things, the conditions of Matson's supervised release prohibited him from: (a) "possessing or using a computer or any other device that has access to any 'on-line computer service,'" including "any Internet service provider…or any other public or private computer network"; (b) having contact "with children under the age of 18 unless approved by the probation officer in advance"; and (c) possessing "any sexually explicit material [as defined in 18 U.S.C. § 2256(2)] in any form that depicts children under the age of 18." Matson was also required to "submit to the search of his person, property, home and vehicle by a United States Probation Officer…based upon reasonable suspicion, without a search warrant." He was also required to attend and actively participate in sex-offender treatment as approved and directed by the USPO.

### B. Matson's Violations of the Terms of His Supervised Release

11. On June 11, 2018, a USPO agent conducted a home inspection at Matson's residence in Glencoe, California. After the inspection, Matson asked for permission to have contact with a 9-year-old girl at his residence. Matson stated the girl's mother was a longtime friend and that he had known the girl since she was a child, having met the child while he was her school bus driver.

12. The USPO agent denied Matson's request, and inquired whether Matson had discussed the request with his therapist. Matson stated he had not, which his therapist later confirmed to the

7

USPO agent.

13. In an earlier discussion, Matson reported to USPO agents that he spent a significant amount of time at a church in Paloma, California, before transferring to a church in San Andreas, California. On June 18, 2018, a USPO agent contacted Matson's pastor in San Andreas. The pastor stated that a woman (identified later as K.P.) and her 9-or-10-year old daughter (identified as the girl who Matson sought permission to have contact) had transferred churches from Paloma to San Andreas approximately 3 years earlier. The pastor stated that the girl referred to Matson as "Uncle Paul."

14. On June 26, 2018, a USPO agent contacted K.P. to report to K.P. Matson's sex offender status. K.P. stated she was aware of Matson's status, had known "Uncle Paul" since she was 9 years old, and that she considered Matson like family. K.P. also stated she grew up in Paloma, California, and her family had been close to Matson's. K.P. insisted she was going to make sure her daughter had contact with Matson because he was like family. K.P. then clarified that she would do so "through the courts."

15. On June 29, 2018, Matson submitted to a polygraph. During post-test disclosures, he admitted to USPO agents that he had recently had lunch with a female friend and her 10-year-old daughter. He denied that he had contact with the 10-year old. Matson also stated he had pictures of minors on his refrigerator, which he admitted aroused him sexually.

16. On July 10, 2018, USPO agents executed a warrantless search on Matson's vehicle, residence, and outbuildings based on his admission that he had been in the presence of a minor, in violation of the terms of his supervised release. In a drawer in Matson's bedroom, USPO agents found six photographs of Matson with a minor girl approximately 6 to eight years old. Five of the photos depicted Matson and the girl with other adults in a restaurant setting. The sixth photo depicted only Matson and the girl, seated on Matson's lap. Matson identified the girl as "[K]" and stated the photos were taken 2 years earlier, in approximately July 2016. Matson also identified K as K.P.'s daughter and conceded that K.P. and K were the individuals he had earlier admitted taking to lunch in May 2018.

17. In the living room of Matson's residence, USPO agents found a handwritten card in what appeared to be a child's handwriting, which thanked "Unc Paul" for all he did from K.P. and K. On the refrigerator, USPO agents found what appeared to be a child's drawing addressed to "Unc Paul"

8

from K. Matson stated that K.P. had given him the drawing 2 months earlier at church.

18. In Matson's residence, USPO agents also found six photos of M.C. hidden behind another photo in a frame, numerous additional photos of children, and a teddy bear. Agents seized two additional teddy bears from Matson's vehicle. Agents also found and seized the **Subject Devices** in various locations. Specifically, agents found **Subject Device 1, 2,** and **5** in Matson's vehicle. They found **Subject Device 3** and **4** in a drawer in Matson's bedroom, and **Subject Device 6** in Matson's living room. Three of the four **Subject Device** telephones included a built-in digital camera. FBI forensic examiners consulted publicly available information concerning each of the **Subject Devices** and concluded that **Subject Devices 1, 2, 4,** and **6** are capable of accessing the Internet.

C. **One of Matson's Contraband Cellular Telephones Contains Images of Child Pornography**

19. On August 7, 2018, a USPO agent conducted a preliminary search of the **Subject Device 1** and observed what appeared to be images of adult and child pornography.[1] The USPO agent was not able to determine whether any of the images of child pornography depicted K, the minor with whom Matson has admitted having contact. After encountering images of suspected child pornography, the USPO agent delivered the cellphone to me for further investigations.

---

[1] In United States v. Lara, 815 F.3d 605 (9th Cir. 2016), the Ninth Circuit held that warrantless searches of probationers' cellphones violate the Fourth Amendment. Later, in United States v. Johnson, 875 F.3d 1265, 1275 (9th Cir. 2017), the Circuit held that a warrantless search of a parolee's cellphone did not violate the Fourth Amendment. In so holding, the Circuit explained the defendant's "parole status alone distinguishe[d]" Johnson from Lara, and affirmed the trial court's ruling that "the warrant requirement does not apply to searches of parolees' cell phones." 875 F.3d at 1272-73 & n.3. The Circuit held that the warrantless cellphone searches in Johnson were reasonable given the defendant's diminished privacy interest as a parolee, because he was subject to a statutory exception to the warrant requirement, and because the searches were not arbitrary, capricious, or harassing. 875 F.3d at 1275.

The Ninth Circuit has not squarely decided whether federal supervised release is more like parole or probation for purposes of the Fourth Amendment question presented here. However, the Ninth Circuit and other federal courts have indirectly found supervised release regimes to be more akin to parole than probation. See United States v. Cervantes, 859 F.3d 1175 (9th Cir. 2017) (holding mandatory supervision for California state inmates is more akin to parole); United States v. Huerta-Pimental, 445 F.3d 1220, 1222 (9th Cir. 2006) ("Supervised release is an integral part of the federal sentencing structure, similar in purpose and scope to its predecessor, parole."); United States v. Paskow, 11 F.3d 873, 881 (9th Cir. 1993) ("Supervised release and parole are virtually identical systems."). See also Johnson v. United States, 529 U.S. 694, 710-11 (2000) ("Two sorts of nondetentive monitoring existed before the introduction of supervised release: probation and parole. Of these pre-Guidelines options, the one more closely analogous to supervised release following imprisonment was parole, which by definition was a release under supervision of a parole officer following service of some term of incarceration. Courts have commented on the similarity."). The warrantless USPO search of **Subject Device 1** was based on reasonable suspicion and was not arbitrary. Thus, it was lawful under Johnson. Nevertheless, in an abundance of caution, I submit this application for a warrant to search all of the **Subject Devices**.

20. A USPO agent reported that, in a previous instance, the agent seized an Internet capable cellular telephone from Matson and searched it. The record is not clear whether the agent found contraband on that telephone. However, the search did not result in a prior petition alleging violations of the terms of Matson's supervised release conditions.

21. On August 8, 2018, the Honorable Deborah Barnes, U.S.M.J., ordered Matson detained after finding probable cause to believe that he violated the terms of his Supervised Release as alleged in a USPO petition against him. As of today, Matson remains in custody.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. <u>Forensic evidence.</u> As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Devices** because:

   a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f) I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

24. <u>Nature of examination.</u> Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. <u>Manner of execution.</u> Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

26. Based on the foregoing, I respectfully submit there is probable cause to believe that the **Subject Devices** contain evidence, contraband and/or fruits of violations of the Specified Federal

11

Offenses. Accordingly, I respectfully request that the Court issue warrants authorizing the search the **Subject Devices**.

## CONCLUSION

27. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(I).

I swear, under penalty of perjury, that the foregoing Information is true and correct, to the best of my knowledge, information and belief.

/s/ L.H. Jones
L.H. Jones
Special Agent
Federal Bureau of Investigation

Approved as to form.

/s/ Andre M. Espinosa
ANDRE M. ESPINOSA
Assistant United States Attorney

Subscribed and sworn to me this 20th day of August, 2018

/s/ Edmond F. Brennan
Honorable Edmond F. Brennan
United States Magistrate Judge
Sacramento, California

# ATTACHMENT A

## Item to be Searched

The following items will be searched for evidence, fruits, and instrumentalities, as described in Attachment B:

- **Subject Device 1:** a black LG cellular telephone (flip phone), model GPLG441GB, bearing serial number 603VTSM545182, and any internal storage media
- **Subject Device 2:** an LG cellular telephone, model GPLG440GB, bearing serial number 305CYPY157496, and any internal storage media
- **Subject Device 3:** an Alcatel cellular telephone, model A382G, bearing serial number 013090004267338, and any internal storage media
- **Subject Device 4:** a black LG cellular telephone (flip phone), model GPLG440GB, bearing serial number 401CYEA370076, and any internal storage media
- **Subject Device 5:** a black Nikon digital camera, model D3200, bearing serial number 3616945, and any internal storage media
- **Subject Device 6:** a black Play Station game console (PS3), model slim 320GB, bearing serial number CG914563028-CECH-2501B, and any internal storage media

(collectively the "**Subject Devices**").

The **Subject Devices** are currently being held at the FBI's Evidence Control Room, located at 2001 Freedom Way, in Roseville, California 95678.

This warrant authorizes the forensic examination of the **Subject Devices** for the purpose of identifying the electronically stored information described in Attachment B.

13

# ATTACHMENT B

## Particular Things to be Seized

The following evidence and fruits of violations of Title 18, United States Code, Sections 2251 and 2252, relating to material involving the sexual exploitation of minors (the "Specified Federal Offenses"), will be seized by law enforcement from the **Subject Devices**:

1. Any images saved to the **Subject Devices** and any internal storage media which appear to depict child pornography, as defined in 18 U.S.C. § 2256(8);
2. Any items, information, records, or data related to or used to further the production, receipt, distribution, or possession of images of child pornography;
3. Any items, information, records, or data that contain information concerning any individual's knowledge of the production, receipt, distribution, or possession of images of child pornography;
4. Information, electronic records, or correspondence concerning the production, receipt, distribution, or possession of images of child pornography, but not limited to electronic mail, chat logs, and electronic or other instant messages;
5. Any text messages in inbox or outbox folders related to production, receipt, distribution, or possession of images of child pornography;
6. Any incoming phone calls that appear to be from phones used by individuals identified to have engaged in the production, receipt, distribution, or possession of images of child pornography.
7. Any entries in the phone contacts related to individuals identified to have engaged in the production, receipt, distribution, or possession of images of child pornography;

As used above, the terms "items", "images", "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

14

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

In the Matter of the Search of
A black LG cellular phone, model GPLG441GB, bearing serial no. 603VTSM545182; an LG cellular phone, model GPLG440GB, bearing serial no. 305CYPY157496; an Alcatel cellular phone, model A382G, bearing serial no. 013090004267338; a black LG cellular phone, model GPLG440GB, bearing serial no. 401CYEA370076; a black Nikon digital camera, model D3200, bearing serial no. 3616945; a black Play Station game console (PS3), model slim 320GB, bearing serial no. CG914563028-CECH-2501B—all located at the FBI Offices at 2001 Freedom Way, in Roseville, CA

Case No.: 2:18-SW-698 EFB

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     California
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

   **YOU ARE COMMANDED** to execute this warrant on or before     9-3-2018     *(not to exceed 14 days)*
   ☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

   Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.
   The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

   ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
      ☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  8-20-2018 at 3:22 p.m.

City and state:  Sacramento, California

_____
Judge's signature

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge                                    Date